UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| AL-MISEHAL COMMERCIAL GROUP, LTD., | ) ) ) | |
| Plaintiff, | ) ) | 2:10-cv-01303 JWS |
| vs. | ) ) | ORDER AND OPINION |
| THE ARMORED GROUP, LLC, | ) ) | [Re: Motions at Dockets 62 and 75] |
| Defendant. | ) ) ) | |

## I.  MOTION PRESENTED

At docket 62, plaintiff Al-Misehal Commercial Group, Ltd. ("plaintiff" or "Al-Misehal") moves pursuant to Federal Rule of Civil Procedure 56 for summary judgment. Defendant The Armored Group, LLC ("defendant" or "TAG") opposes the motion at docket 70.  Al-Misehal's reply is at docket 73.

At docket 75, TAG moves to strike the statement of facts accompanying Al-Misehal's reply brief and portions of the reply brief itself.  Al-Misehal responds to the motion at docket 77.  TAG's reply is at docket 78.

Oral argument was not requested with respect to either motion and would not assist the court.

## II.  BACKGROUND

Al-Misehal is a Saudi Arabian company.  It received an order from the Minister of Defense and Aviation of Saudi Arabia for seven customized vehicles.  TAG is an Arizona corporation that does customization work.  On March 20, 2006, Al-Misehal contracted with TAG for the purchase of seven customized Ford Excursions.  Three of the vehicles were to be armored and equipped with remotely operated weapons systems.  Four of the vehicles were to be equipped with BombJammers ("jammers") to defend against improvised explosive devices.  The vehicles were to be delivered by September 22, 2006.  The total contract price was $ 1,892,000.  Al-Misehal provided TAG with a $946,000 deposit.[1]

On April 10, 2006, TAG contracted with Homeland Security Strategies, Inc. ("HSS") for supply and installation of the jammers.  TAG almost immediately communicated to Al-Misehal concern as to HSS's ability to perform.[2]  By May 13, 2006, TAG sought assurance from HSS that it would perform.[3]  TAG never received assurance from HSS, but as late as June 10, 2006, conveyed to Al-Misehal that it believed HSS would perform under the contract.[4]  Al-Misehal cancelled its contract with TAG on June 29, 2006, ostensibly because HSS's failure to perform meant that TAG could not meet the September 2006 deadline.[5]

---

[1] *See* doc. 63-1 at 1.

[2] Doc. 71-2 at 2–3.

[3] Doc. 65-1 at 1–2.

[4] Doc. 63-5 at 2.

[5] Doc. 1 ¶ 12.

TAG ultimately sued HSS for breach of contract in the Southern District of New York and won a $1,018,400 judgment plus interest.[6] That court determined, among other things, that Al-Misehal cancelled its contract with TAG because of HSS's failure to supply the jammers.[7]

Al-Misehal brought this lawsuit against TAG in June of 2010. Al-Misehal asserted claims for breach of contract and, in the alternative, unjust enrichment. It seeks damages for TAG's alleged breach in an amount to be determined at trial, or return of its $946,000 deposit.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."[8] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[9] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[10] In resolving a motion for summary judgment, a court must view the evidence in the light most favorable to the

---

[6] Doc. 63-3.

[7] Doc. 65-1 at 2–3.

[8] Fed. R. Civ. P. 56(c)(2).

[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[10] *Id.*

non-moving party.[11]  The reviewing court may not weigh evidence or assess the credibility of witnesses.[12]  The burden of persuasion is on the moving party.[13]

### IV.  DISCUSSION

**A. Motion to Strike**

TAG correctly argues that the Local Rules do not contemplate a separate statement of facts accompanying a reply brief.[14]  Al-Misehal responds that it included the additional statement of facts to respond to what it construed as TAG's cross-motion for summary judgment.  Al-Misehal does not oppose the motion as it pertains to the statement of facts because TAG clarified that its response was not intended to be a cross-motion for summary judgment.  Al-Misehal argues that the relevant portions of the reply brief need not be stricken because those portions respond to TAG's assertion of two new affirmative defenses.  TAG's arguments that the statute of limitations on Al-Misehal's claim has run and that Al-Misehal breached the contract are not properly raised in response to a motion for summary judgment, and the court will disregard them.  The court will similarly disregard the portions of Al-Misehal's reply brief that respond to those arguments.  Therefore, while the statement of facts will be stricken, it is not necessary to strike any portion of the reply brief.

---

[11]*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000).

[12]*Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1036 (9th Cir. 2005).

[13]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[14]*See* LRCiv. 56.1(a), (d).

**B. Repudiation**

Al-Misehal maintains that TAG breached the parties' contract because HSS did not manufacture the jammers in time. Here, there is no genuine dispute that Al-Misehal cancelled the contract. The contract contained a force majeure clause that contemplated cancellation "on account of . . . failure of source of supply," but it only gave TAG–not Al-Misehal–a right to cancel.[15] The question is whether Al-Misehal's cancellation was in response to TAG's repudiation of the contract.

Al-Misehal cancelled the contract on June 29, 2006.[16] The deadline for delivery of the armored trucks was September 22, 2006.[17] Al-Misehal argues that TAG breached the contract in June 2006, when HSS failed to give adequate assurance of performance. TAG argues that Al-Misehal did not comply with the requirements of A.R.S. § 47-2609. That statute is a codification of § 2-609 of the Uniform Commercial Code and provides that "[w]hen reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return."[18]

TAG is mistaken that "under the UCC a failure by TAG to provide 'adequate assurance of due performance' is the only possible theory" under which TAG could

---

[15]Doc. 63-1 at 3.

[16]Doc. 1 ¶ 12.

[17]Doc. 1 ¶ 8.

[18]A.R.S. § 47-2609(A).

have repudiated the contract.[19]  Although a failure to provide such assurance "within a reasonable time not exceeding thirty days" is a repudiation of the contract,[20] the commentary to § 2-610 of the Uniform Commercial Code (codified at A.R.S. § 47-2610) makes clear that § 2-609 only deals "[w]ith the problem of insecurity."[21]  Anticipatory repudiation can occur under other circumstances–through "an overt communication of intention or an action which renders performance impossible or demonstrates a clear determination not to continue with performance."[22]

Al-Misehal argues that an e-mail exchange indicated that performance would be impossible.[23]  But that exchange ends with Al-Misehal approving substitute jammers.[24]  A later e-mail exchange indicates that TAG believed HSS would perform on time.[25]  It also suggests that Al-Misehal was not willing to accept substitute jammers.[26]  The same exchange does indicate that Al-Misehal became convinced that HSS would not perform.[27]  However, it is unclear what caused Al-Misehal's belief.  Al-Misehal has not at

---

[19]Doc. 70 at 5.

[20]A.R.S. § 47-2609(B).

[21]U.C.C. § 2-609 cmt. 1; *see also id.* § 2-609 cmt. 2 ("Repudiation can result from action which reasonably indicates a rejection of the continuing obligation.  And, a repudiation automatically results under [§ 2-609] when a party fails to provide adequate assurance of due future performance within thirty days after a justifiable demand . . . has been made.").

[22]*Id.*

[23]Doc. 73 at 4; doc. 71-2.

[24]Doc. 71-2 at 5.

[25]Doc. 63-5 at 2.

[26]Doc. 63-5 at 1.

[27]*Id.*

this juncture pointed to a definitive "overt communication of intention or an action which renders performance impossible or demonstrates a clear determination not to continue with performance."[28]  There is, consequently, an issue of material fact as to precisely what action, if any, rendered performance impossible and judgment is not appropriate as a matter of law.[29]

## C. Judicial Estoppel

Al-Misehal argues that judicial estoppel precludes TAG from arguing that it did not breach the contract.  There are three factors that "typically inform the decision whether to apply the doctrine in a particular case."[30]  First, the party's later position must be "clearly inconsistent" with an earlier position.  Second, if a court has been persuaded by the earlier position, application of the doctrine is more appropriate.  Third, a court should consider whether the party would gain an unfair advantage by asserting the inconsistent position or whether the opposing party would suffer an unfair detriment.

Al-Misehal argues that TAG's position that it did not breach its contract with Al-Misehal is inconsistent with TAG's position in the earlier proceeding that HSS breached its contract with TAG.  TAG argues that it has had one consistent position–"that HSS breached its contract with TAG, causing damages because Al-Misehal consequently

---

[28] U.C.C. § 2-609 cmt. 1.

[29] The Southern District of New York found that HSS failed to provide TAG reasonable assurance that it would perform.  Doc. 65-1 at 2.  If that information had been communicated to Al-Misehal, the communication could have been treated as a repudiation.  However, to the contrary, TAG conveyed a–presumably false–belief that HSS would deliver the jammers on time.  Doc. 63-5 at 2.

[30] *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).

breached its contract with TAG."[31] The court agrees that TAG's characterization is not internally inconsistent. In its reply brief, Al-Misehal clarifies its contention that TAG is estopped from arguing that Al-Misehal cancelled its contract with TAG for any reason other than that HSS did not perform its contract with TAG. The court agrees. TAG adopted that position in litigation in the Southern District of New York, that court was persuaded by TAG's position, and allowing TAG to assert an inconsistent position in the current proceedings–in which Al-Misehal seeks to recover its deposit–would cause Al-Misehal to suffer an unfair detriment.

### D. Issue Preclusion

Al-Misehal argues that TAG is precluded from re-litigating "the issue of what caused TAG's inability to perform."[32] Al-Misehal states that "HSS's failure and refusal to perform its contract with TAG necessarily meant that TAG was unable to perform the [c]ontract with Al-Misehal."[33] Al-Misehal's argument does not flow. The Southern District of New York did not, and could not have determined that TAG breached its contract with Al-Misehal. It only determined that Al-Misehal's cancellation of the contract was based on HSS's failure to supply the jammers. The court has already determined that TAG is judicially estopped from asserting otherwise. Application of nonmutual, offensive collateral estoppel requires, *inter alia*, that "the issue was actually

---

[31] Doc. 70 at 11.

[32] Doc. 62 at 8.

[33] Doc. 62 at 8.

litigated in the prior action" and "decided in a final judgment."[34]  Whether TAG breached its contract with Al-Misehal was neither actually litigated nor decided.

## V.  CONCLUSION

For the reasons above, plaintiff's motion at docket 62 is **GRANTED** in part and **DENIED** in part as follows:

1) It is denied to the extent there are genuine issues of material fact concerning repudiation of the agreement.

2) It is granted such that TAG may not argue that Al-Misehal cancelled the agreement for a reason other than HSS's failure to supply the jammers.

3) It is denied to the extent it seeks application of collateral estoppel to establish that TAG breached the contract.

The motion at docket 75 is **GRANTED** in part.  The Clerk will please strike the statement of facts at docket 74.

Finally, it appears to the court that this case could be settled by the parties and they are encouraged to do so.

DATED this 30th day of September 2011.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[34] *Syverson v. International Business Machines Corp.*, 472 F.3d 1072, 1078 (9th Cir. 2007).